Where a testatrix bequeathed general legacies and the following paragraph of the will provided that her executor should sell named real estate and discharge the legacies with the proceeds, such proceeds are not general assets applicable to the payment of debts and expenses of administration, the legatees occupying the position of specific devisees of the real estate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 2108; Dec. Dig. § 812.*]

2. EXECUTORS AND ADMINISTRATORS (§ 314*)—PAYMENT OF LEGACIES.

Where a testatrix provided for the payment of general legacies out of the proceeds of a sale of named real estate and the executor disposed of the realty, the legatees may, unless their legacies are satisfied within a reasonable time, apply to the surrogate to compel the executor to make payment.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1274–1297; Dec. Dig. § 314.*]

3. EXECUTORS AND ADMINISTRATORS (§ 507*)—ACCOUNTING—ADJOURNMENT.

In a proceeding for the judicial settlement of the accounts of an executor who claimed the right to apply the proceeds of a sale of land to payment of debts and expenses of administration, the action of the surrogate in adjourning the proceeding until an accounting should be made is not error, though none opposed the accounting on the return day.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2004, 2005, 2178–2191; Dec. Dig. § 507.*]

Appeal from Surrogate's Court, Rensselaer County.

Judicial settlement of the account of Joseph H. Broderick, as executor of the will of Anna E. Morton, deceased. From the decree, the executor appeals. Modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

T. S. Fagan, of Troy (H. D. Bailey, of Troy, of counsel), for appellant.

O'Brien & Murray, John P. Judge, E. L. Nugent, and James V. Coffey, all of Troy, for respondents.

SMITH, P. J. Anna E. Morton died November 9, 1909, leaving no husband. She left a will, the construction of which is here in controversy. By the first provision of the will a specific legacy was given. By the second provision a devise of certain real estate was given to Joseph H. Broderick. By the third certain general legacies were given, amounting to about $4,750. The fourth provision reads as follows:

"For the purpose of paying and satisfying the legacies specified and bequeathed in and by the third provision of this my last will and testament, I do hereby authorize and empower and order and direct my executor hereinafter named to sell and dispose of the real estate and premises owned by me and known and designated as No. 2323 Fifth avenue in the city of Troy, N. Y., and to execute to the purchaser or purchasers thereof, proper instruments of conveyance."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

By the fifth provision of said will Joseph H. Broderick was made the residuary devisee and legatee, and by the sixth provision he was named as executor. The decedent left less than $300 of personal property, and besides the real estate mentioned in the second and fourth provisions of the will certain other real estate, which passed to the residuary devisee under subdivision fifth thereof. The will was established before the surrogate after a contest made by an heir at law. This appeal is from the order made upon the accounting of the executor.

Pursuant to the direction of the will contained in the fourth subdivision the executor had sold the property 2323 Fifth avenue for $5,075. The funeral expenses amounted to $330. The debts of the estate amounted to $389.70. The carrying charges of No. 2323 Fifth avenue · to the date of sale amounted to $866. The expenses of administration are claimed as $5,510. This large expense of administration was incurred through an action brought by the executor very soon after the probate of the will, under section 2653a of the Code of Civil Procedure, for the purpose of determining the validity of the probate, which was finally brought to a successful termination by the executor. The decree from which the executor here appeals determined that he had received $224.90 from the personal estate of the deceased, and that he had applied all of said personalty upon and towards the payment of the necessary and proper expenses of administration, and that no personal property remained in his hands wherewith to pay the remaining expenses of administration, if any, the funeral expenses and debts of the deceased. The decree further provided that from the $5,075 received upon the sale of 2323 Fifth avenue the executor should pay the said legacies mentioned in the third clause of the will—

"less such pro rata reduction thereof as may arise from the determination as to the proceeds of the sale of real estate of the deceased for the payment of her debts and total expenses, after first applying, to satisfy such charges for debts and expenses, the surplus of the proceeds of the sale of said realty over and above the amount requisite to pay the legacies therein, and it is further adjudged and determined that the proceeds now in the hands of the executor are not general assets of the estate of the deceased, and are not upon this judicial settlement applicable to the payment of expenses of administration, funeral expenses or debts, and that at the present time and until the determination shall have been made in the proceeding to sell the real estate of the deceased for the payment of debts, funeral expenses, etc., this court is without power to order the distribution in detail of the funds in the hands of the executor arising from the sale of said realty, further than is ordered by this decree."

[1] The first objection to the decree urged by the executor is that the direction to sell No. 2323 Fifth avenue for the payment of these legacies constituted an equitable conversion, and that the proceeds thereof became general assets applicable as to the payment of debts and expenses of administration. The authorities would seem to hold otherwise. In Jouffret v. Loppin, 20 App. Div. 456, 46 N. Y. Supp. 810, one Alexander Loppin by his will gave to each of his three children the sum of $10,000, and directed that the house in which he lived, and which was the only real estate then owned by him, should be sold

for the payment of said legacies, and afterwards divided into five equal parts to be distributed to others.

"After the death of the testator the house was sold, and the amount realized by the executors was adequate only to pay part of the legacies. Subsequently an action was brought by the legatees, within three years from the granting of the letters testamentary to the executors, to partition certain lands acquired by the testator subsequent to the making of the will, as to which he died intestate. Held, that the real estate, as to which Alexander Loppin died intestate, was not chargeable with the legacies in question; that it was evidently his intention that the proceeds of the house mentioned in the will should be appropriated to the payment of the legacies, the debts of the testator, which his personalty was insufficient to pay, should be charged upon the other real estate sought to be partitioned."

In Winants v. Terhune, 15 N. J. Eq. 185, it is held:

"If a testator directs lands to be sold and converted into money to pay his debts, the proceeds become a fund which is liable for his debts. But where the conversion of the land into money is ordered in the will for a specific purpose, as if the direction is to convert the estate in order to give a legacy, the creditors cannot claim the money as personal estate."

The opinion in part reads:

"It makes no difference, in respect to this question, in what quality the devisee took the property, whether as real or personal. As far as she was concerned, it was personal property; for, as such, it was the intention of the testator she should take it. In the event of her death it would have gone to her personal representatives. But the land was converted for no purpose except that which the will directed; and if the creditors have any claim to it, they must show it under the will. The conversion was merely the mode in which the estate was given for certain specified purposes; and, simply because that mode has been adopted, it cannot so change its character as to defeat the intention of the testator. The executor had no right to take the proceeds of the sale for any other purpose but that directed by the will. It was not personal property for any other purpose. It is admitted that without this fund the personal estate of the testator was deficient. In contemplation of the statute, then, the personal estate of the testator was not sufficient to pay his debts."

The case was there remitted to the Orphans' Court, with direction to proceed and make a decree for the sale of real estate of the testator to pay his debts, or so much thereof as may be necessary for the purposes. The surrogate then properly held that the proceeds of the sale of this Fifth avenue property was not personal property applicable to the payment of debts. I do not understand that the decree is intended to establish in what order the various parcels of real estate should be sold for the payment of debts when application is made therefor. To the extent of these legacies these legatees would seem to be in the position of specific devisees of this real estate. In Tehan v. Tehan, 83 Hun, 370, 31 N. Y. Supp. 961, the Fifth Department seems to have held that in ordering a sale of real estate for the payment of debts—

"it would be the duty of the court to first order that sold which had not been specifically devised, and if sufficient, save that specifically devised to carry out the intentions of the testator."

If that be the rule of law the real estate passing under the residuary clause of the will must first be sold to pay the debts and expenses of

administration. This question it is not necessary now, however, to determine.

[2] Upon the argument of the appeal the question was discussed as to whether the costs of the action brought to confirm the probate of the will were proper expenses of administration; the respondents arguing that the executor was without power to bring the action. This question it is unnecessary to determine. Upon the application for the sale of property to pay debts the validity of all debts, as well as the propriety of all expenses of administration, will have to be determined.

Unless application be made within reasonable time by the executor for the sale of property to pay debts, the legatees might apply to the surrogate to compel the executor to make payment of their legacies out of the proceeds of the sale of the Fifth avenue property which he holds.

[3] Criticism is made of the action of the surrogate in adjourning the proceeding for the accounting, although there were no parties opposing the accounting upon the return day. His official duty, however, required him to act for the best interests of the estate, and his action therein is properly a subject for commendation rather than of criticism.

The executor here is acting in his own personal interest. He is both a specific and residuary devisee. The decree, therefore, should be modified so as to provide for the payment of the legacies from the proceeds of the sale of the Fifth avenue property, less the carrying charges properly applicable thereto. The surrogate may, however, postpone payment until application may be made to sell real estate for the payment of decedent's debts and administration expenses, and it be then determined whether any part of such fund be applicable to the payment thereof. Respondent may have costs of this appeal from the executor personally.

Decree modified as per opinion, with costs to respondent against executor personally. All concur, except HOWARD, J., not voting.